# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS ANTONIO OCHOA, CDCR #F-81217,<br><br>                              Plaintiff,<br><br>  vs.<br><br>DR. JOHN HODGES; DR. LUZVIMINDA SAIDRO; JANE DOE, Registered Nurse; MITCHEL, ADA Seargeant,<br><br>                              Defendants. | Case No. 23-cv-2058-MMA (MMP)<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)**<br><br>**[Doc. No. 6]** |

## I.  INTRODUCTION

Marcus Antonio Ochoa ("Plaintiff" or "Ochoa"), a state inmate proceeding pro se, is proceeding with a civil rights action pursuant to 42 U.S.C. § 1983.  The Court dismissed his original complaint for failure to state a claim but granted Plaintiff leave to amend. Doc. No. 3.  And after an extension of time, Ochoa filed a First Amended Complaint ("FAC"). Doc. No. 6.  For the reasons discussed below, the Court dismisses the FAC for failure to state a claim.

## II.  SCREENING PURSUANT TO 28 U.S.C. § 1915(E) AND § 1915A(B)

### A. Legal Standards

Because Plaintiff is a prisoner proceeding IFP, the FAC requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  The Court must *sua sponte* dismiss a prisoner's IFP FAC, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  Rule 12(b)(6) requires that a complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  *Id*.  The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard.  *Id*.; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. Plaintiff's Allegations

In his FAC, Ochoa alleges that on May 20, 2022, he was working and as an "ADA employee" at Richard J. Donovan Correctional Facility ("RJD").  Doc. No. at 6.  Plaintiff usually uses a cane but, at the time, he was relying on the push broom he was using to sweep, as support while he was working.  *Id.* at 3.  As he was sweeping, an announcement came over the public address system, directing Ochoa to report to the infirmary.  *Id.*  When he arrived, Ochoa had to leave his broom outside the infirmary because tools are not permitted inside.  *Id.*

Nurse Jane Doe asked Ochoa to come into her office and began "inquiring about [Ochoa's] cane." *Id.* Plaintiff told her it was "with the rest of [his] tools," and explained that when his job required him to use items such as brooms, rakes, and hoes, he used the tool for support as opposed to his cane. At all other times, he used his cane. *Id.* Nurse Doe asked how Plaintiff was feeling and he had his "usual aches and pains" but generally, he was "all right." *Id.* Doe took Plaintiff's "vitals" and then told him he was free to go. *Id.*

On May 25, 2022, Plaintiff was informed that his "permanent lower tier chrono CDCR 1845/7410, Disability Placement Program Verification/Comprehensive Accommodation Chrono" had been updated and changed "from DPM to DNM due to [Nurse Doe's] examination."[1] *Id.* An unnamed CDCR officer told Ochoa that he had to "relinquish [his] lower tier housing area (cell) so that they could house another ADA inmate" there. *Id.* at 10. The officer explained that Ocho's "chrono" had been updated to DNM so that he could be moved to an upper tier and Ochoa would need to get a medical order to "set things right and maintain his lower tier status." *Id.*

About "four or five days later," Sergeant Mitchell, an "ADA Liaison," approached Ochoa and asked him why he had not moved yet. Ochoa responded that he thought "medical" had solved the problem. *Id*. But Mitchell stated nothing had changed and therefore Ochoa mad to move. Plaintiff again explained he had a tendency to trip and fall on "uneven terrain" and that "walking up and down a flight of stairs would expose [him]

---

[1] At another point in his FAC, Ochoa states he was reclassified from "DPO to DNM." FAC at 5. While Plaintiff does not define the acronyms, they appear to refer to disability designations outlined in a class action concerning disability accommodations for prisoners and parolees in the CDCR *See Armstrong v. Brown*, N. D. Cal. No. 94-cv-2307-CW (setting forth the is "*Armstrong* Remedial Plan" which requires the CDCR "to ensure that prisoners and parolees with disabilities are accessibly housed, that they are able to obtain and keep necessary assistive devices, and that they receive effective communication regarding accommodations") *See id*., ECF No. 1974 (Order filed January 13, 2012).

to serious harm and injury if [he] were to fall." *Id.* at 10, 12.  Mitchell replied that the decision "wasn't up to him" and there was nothing he could do. *Id.* at 12.

On June 1, 2022, Ochoa asked to see his primary care physician, Dr. Saidro. *Id.* at 5.  When Saidro asked Plaintiff what it was about, he told her RJD staff wanted to move him to an "upper tier housing area due to my permanent lower tier chrono being changed from DPO to DNM." *Id.*  Plaintiff asked how his disability chrono had been changed when he had not been evaluated by a physician. Saidro explained that the change had been made by her supervisor, Dr. Hodges, after Ochoa had "been observed walking without [his] cane." *Id.*  Hodges is on the Reasonable Accommodation Panel ("RAP") at RJD. *Id.*  Ochoa reminded Saidro that he did not have "an ambulatory issue on levelled terrain" and that he used his "work tools (i.e., brooms, shovels, rakes, and hoes) instead of [his] cane for support when [he] is on the job." *Id.*

Ochoa alleges Saidro "admitted that [Ochoa] did need lower tier housing accommodations and that she would not have may the change to his permanent CDCR 1845/7410 choro it if had been up to her." *Id.* at 7.  But she explained that she could not "go against her supervisor['s] order." *Id.*  Ochoa told her it was not fair and there was a "great possibility that [he] [could] trip, fall and injure himself" if assigned to upper tier housing.  Saidro reiterated that it was "out of her purview." *Id.*

On June 9, 2022, Ochoa spoke to Mitchell again, along with an inmate ADA representative. *Id.* at 12.  Mitchell again explained that it was "out of his hands." *Id.*  When Ochoa pressed the issue, Mitchell stated that "if you don't want to move upstairs, then we will find you a cell on the bottom tier in [administrative segregation]." *Id.* at 12–13.  Ochoa responded there was "no reason to threaten [him]."  Ochoa moved from his lower tier cell to an upper tier cell later that afternoon. *Id.* at 13.

On June 10, 2022, Plaintiff "tripped and fell from the top of the stairs" while carrying a tray of food in one hand and his cane in the other. *Id.* at 7.  After his fall he taken "by ambulance" to the facility's Correctional Treatment Center ("CTC"). *Id.* at 8.  Ochoa was examined by an unnamed doctor who ordered X-rays and an injection for

Ochoa's pain. *Id.* Plaintiff was then released back to his yard. At some point, Ochoa asked another inmate to lend him his wheelchair for mobility. *Id.*

On June 13, 2022, saw an unnamed male nurse in response to a request from Ochoa that he be provided a wheelchair "because he could not ambulate on [his] own power." *Id.* at 8. The nurse referred Ochoa to Saidro for another consultation and Plaintiff met with her the next day, June 14, 2022. *Id.* Saidro asked Ochoa about the wheelchair he was using and he explained that another inmate had let him borrow it so that he could be mobile while he waited to get his own wheelchair. *Id.* At first, Saidro wanted to confiscate the borrowed wheelchair and penalize the inmate who had loaned it to Ochoa. *Id.* But eventually, she asked Ochoa why he needed a wheelchair. He told her he had tripped and fallen from the top of the stairs, and he was in pain due to his injuries. *Id.* at 9. Saidro commented that Ochoa had "probably done it on purpose" but "reluctantly" gave Ochoa a loaner wheelchair to use for thirty days. *Id.*

On June 16, 2022, Plaintiff was "swabbed" for transfer to another facility. A few days later he was transferred to Solano State Prison. *Id.* at 9.

**C.     Discussion**

In his FAC, Ochoa alleges Defendants Doe, Hodges, Saidro, and Mitchell violated his rights under the Eighth Amendment, Fourteenth Amendment, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA") and the Unruh Civil Rights Act. *See id.* at 4, 6, 11. He seeks money damages and an injunction preventing Defendants from retaliating against him or interfering with his medical services and classification. *Id.* at 15.

   **1.     *Eighth Amendment***

Plaintiff alleges Defendants violated his Eighth Amendment rights when his disability classification was changed to permit him to be housed in an upper tier cell. *See id.* at 4, 6, 11.

        a.       Legal Standard

"[T]he Eighth Amendment's prohibition on cruel and unusual punishment prevents government officials from acting with deliberate indifference to a prisoner's health and safety." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016) (citing *Hope v. Pelzer*, 536 U.S. 730, 737–38 (2002)). To establish an Eighth Amendment violation, a plaintiff must meet both an objective and subjective test. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). First, a plaintiff's alleged deprivation must be sufficiently serious from an objective standpoint. Put another way, a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Second, a prison official must act, or fail to act, with "deliberate indifference" to a prisoner's health and safety. *Id*. In the prison context, "only unnecessary and wanton infliction of pain" implicates the Eighth Amendment. *Id*. (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Thus, a court can hold a prison official liable only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

In addition, liability may be imposed on an individual defendant under section 1983 only if the plaintiff can show the defendant proximately caused the deprivation. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). An individual "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

b.  Discussion

As for the objective prong, Ochoa alleges he has "physical and mobility impairments" which make it unsafe for him to be housed in an upper tier cell because he has a "tendency to trip and fall on uneven terrain." FAC at 5, 10.  Ochoa states that prior to his May 2022 reclassification, he had a "permanent lower tier chrono" based on his classification as a DPM and/or DPO inmate.[2] *Id.* at 3, 5.  He alleges his classification was improperly changed to DNM, a classification which presumably does not require lower tier housing.  *Id.*  While Plaintiff fails to provide any specifics on the cause or nature of his physical and mobility issues, given his previous classification and lower tier chrono, the Court finds Ochoa has plausibly alleged a sufficiently serious deprivation.

Plaintiff, however, has failed plausibly allege any Defendant acted with deliberate indifference.  As to Defendant Doe, Ochoa contends his reclassification was based on her May 20, 2022 examination of him, during which she noted he was not using his cane. FAC at 3.  But Plaintiff has failed to allege any facts to suggest Doe knew Ochoa would be reclassified as a result of her examination.  Nor has he alleged any facts from which it could be inferred Doe was aware such a change would result in his transfer to upper tier housing or otherwise amount to an excessive risk to Ochoa's safety.  *See Farmer*, 511 U.S. at 837.  Furthermore, Ochoa concedes that Dr. Hodges, not Doe, made the decision to change his disability classification.  *See Leer*, 844 F.2d at 634 (9th Cir. 1988) (stating liability under § 1983 requires the plaintiff to show the defendant proximately caused the deprivation).  Thus, the Court finds Plaintiff has failed to state an Eighth Amendment claim against Doe.

Ochoa also fails to state a claim against Hodges. Plaintiff alleges Hodges "made the decision [to reclassify him] because he had been observed walking without [his] cane" FAC at 5.  But the FAC contains no other factual allegations from which it could

---

[2] Taken in context, it appears inmates designated DPO or DPM require specific housing accommodations, such as lower tier housing, while DNM inmates do not.

be inferred Hodges was aware the reclassification was "medically unacceptable under the circumstances" and was made "in conscious disregard of an excessive risk" to Ochoa's health or safety. *See Farmer*, 511 U.S. at 837; *Iqbal*, 556 U.S. at 678. Specifically, there are no facts regarding what Hodges knew at the time about Ochoa's physical condition, medical history or specific limitations related to his mobility prior to ordering the reclassification. Furthermore, while Plaintiff alleges the reclassification was inappropriate, a difference of opinion between an inmate and medical professional (or between medical professionals) is not enough to support a plausible deliberate indifference claim. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citations omitted); *Toguchi v. Chung*, 391 F.3d 1051, 1059–60 (9th Cir. 2004). Thus, Ochoa's conclusory allegation that Hodges' decision to reclassify him amounted to deliberate indifference is insufficient to state an Eighth Amendment claim. *Iqbal*, 556 U.S. at 678.

Plaintiff has also failed to plausibly allege that Saidro, his primary care physician, acted with deliberate indifference in failing to override Hodges' decision. Ochoa states that after he learned of his reclassification, he went to see Saidro. He alleges she told Ochoa that she "wouldn't have made any changes" to Ochoa's classification but that she would not override the decision of Hodges, her supervisor. FAC at 7. However, even assuming Saidro had the power to rescind Hodge's decision, Ochoa has failed to adequately allege she knew a failure to rescind his reclassification and/or prevent his housing transfer would create an excessive risk to Ochoa's health or safety. *See Farmer*, 511 U.S. at 837; *Iqbal*, 556 U.S. at 678. While Saidro may have expressed a different opinion from Hodges', this alone does not alone amount to deliberate indifference. *See Hamby*, 821 F.3d at 1092. Ochoa has failed to state specific facts from which an inference could be drawn that Saidro believed Ochoa's reclassification amounted to a "conscious disregard of an excessive risk" to Ochoa's health or safety. *See Farmer*, 511 U.S. at 837. Therefore, Ochoa has failed to state a claim against Saidro. *Iqbal*, 556 U.S. at 678.

Lastly, Ochoa fails to plausibly allege an Eighth Amendment claim against Mitchell, the ADA Liaison. First, Ochoa acknowledges Mitchell took no part in the decision to reclassify him and as such fails to plausibly allege Mitchell proximately caused the deprivation. *See Leer*, 844 F.2d at 634. In addition, Plaintiff alleges no facts to suggest Mitchell, who does not appear to be a medical professional, had any specific knowledge of his medical condition sufficient to infer he was consciously aware of an excessive risk to Ochoa's safety. *See Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1084 (9th Cir. 2013) (concluding non-medical staff did not act with deliberate indifference when they reasonably relied on the expertise of the prison's medical staff); *see also Edwards v. Clark Cnty.*, 2016 WL 866302, at *6 (D. Nev. 2016) (finding correctional officers are entitled to reasonably rely on the expertise of the prison's medical staff). Therefore, Plaintiff has failed to state a claim against Mitchell. *See Leer*, 844 F.2d at 634; *Farmer*, 511 U.S. at 837; *Iqbal*, 556 U.S. at 678.

Accordingly, the Court finds that Plaintiff has failed to state an Eighth Amendment claim as to any defendant upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. The Court therefore dismisses the claim without prejudice.

### 2. **Fourteenth Amendment**

Ochoa lists the "Fourteenth Amendment" as a basis for relief but fails to identify the specific basis for his claim.[3] *See* FAC at 4, 6, 11. He appears to argue that his

---

[3] To the extent Plaintiff may be attempting allege Defendants violated his right to equal protection, he also fails to state a claim. The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Because "the disabled do not constitute a suspect class" for equal protection purposes, a governmental policy that purposefully treats the disabled differently from the non-disabled need only be "rationally related to legitimate legislative goals" to pass constitutional muster. *Does 1–5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) (citing *City of Cleburne*, 473 U.S. at 440). Here, Ochoa has alleged no facts suggesting he was treated differently based on his disability.

classification was changed without a sufficient medical evaluation. *Id.* at 5. As such, to the extent Ochoa alleges the change to his medical/disability classification was made without adequate process, he fails to state a claim because prisoners have no federally protected liberty interest in their classification status. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987). No federal due process right is implicated by a prison's classification decision. *See Meachum v. Fano*, 427 U.S. 215, 224–25 (1976). Therefore, Plaintiff has failed to state a plausible Fourteenth Amendment claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Lopez*, 203 F.3d at 1126–27. And because amendment would be futile, the claim is dismissed without leave to amend. *See Gonzalez v. Planned Parenthood*, 759 F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of . . . leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Lopez*, 203 F.3d at 1127.

### 3. ADA and RA

Plaintiff also alleges Defendants violated his rights under the ADA and RA. FAC at 4, 6, 11. The ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.*, § 12131(2). While the RA has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. Thus, courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citations omitted).

Here, Ochoa names Defendants in their individual capacities only (*see* FAC at 2) and as such, he has failed to state a claim under the ADA or the RA. "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

Moreover, "[t]o recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). The test for intentional discrimination under the ADA and/or RA is deliberate indifference, which requires (1) knowledge that a harm to a federally protected right is substantially likely; and (2) failure to act upon that likelihood. *Id*. at 1139. The first prong of the deliberate indifference test is satisfied when the plaintiff has alerted the entity to his need for an accommodation, or where the need for accommodation is obvious. *Id*. The second prong requires a failure to act that is more than negligent and involves an element of deliberateness. *Id*. For the reasons discussed above, Plaintiff has failed to plausibly allege deliberate indifference on the part of any Defendant.

Based on the above, the Court concludes Ochoa has failed to state a plausible claim under the ADA or RA against any Defendant and therefore the claims are dismissed without prejudice. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *see also Lopez*, 203 F.3d at 1126–27.

### 4. **Unruh Act**

Finally, Plaintiff has failed to state a claim under the Unruh Civil Rights Act. FAC at 4, 6, 11. "The Unruh Act, [California] Civ. Code § 51, is a public accommodations statute that focuses on discriminatory behavior by business establishments." *Kenney v. City of San Diego*, No. 13-cv-0248-WQH-DHB, 2013 WL 5346813, at *3 (S.D. Cal. Sept. 20, 2013) (quoting *Stamps v. Superior Court*, 136 Cal. App. 4th 1441, 1452 (2006)). "The Unruh Act's overarching purpose is 'to create and preserve a nondiscriminatory environment in California business establishments by banishing or

eradicating arbitrary, invidious discrimination by such establishments.'" *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138, 154 (2021) (quoting *White v. Square, Inc.*, 7 Cal. 5th 1019, 1025 (2019)).

Here, the Court finds Ochoa cannot state a claim under the Unruh Act. The overwhelming weight of authority holds that correctional facilities are not "business establishments" for purposes of the Unruh Act. *See Taormina v. Cal. Dept. of Corr.*, 946 F. Supp. 829, 834 (S.D. Cal. 1996) (concluding "a prison does not qualify as a 'business'" under the Unruh Act) (citing *O'Connor v. Village Green Owners Assoc.*, 33 Cal. 3d 790, 795 (1983)); *see also Addison v. California Inst. for Men*, 2016 WL 8732476, at *10 (C.D. Cal. 2016) ("Prisons and jails, however, are not business establishments, and therefore, are not subject to suit under the Unruh Act.") (citing cases); *Anderson v. Cnty. of Siskiyou*, 2010 WL 3619821, at *6 (N.D. Cal. 2010) ("To conclude that a jail is governed by the Unruh Act, notwithstanding the fact that it lacks the attributes of a business, would amount to an impermissible expansion of the statute."); *Downs v. Los Angeles Sheriff's Dep't*, 2023 WL 9660661, at *14 (C.D. Cal2023) (same). Therefore, the Court concludes Ochoa has failed to state a claim under the Unruh Act as to any Defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). And because the Court finds amendment would be futile, the claim is dismissed with prejudice. *See Gonzalez*, 759 F.3d at 1116; *Lopez*, 203 F.3d at 1127.

**D.     Leave to Amend**

Given Plaintiff's pro se status, the Court grants him one final opportunity to amend his complaint, as to his Eighth Amendment, ADA and RA claims only, to sufficiently allege a claim if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quote marks omitted).

### III. CONCLUSION AND ORDER

For the reasons set forth above, the Court hereby:

1. **DISMISSES** Plaintiff's Fourteenth Amendment and Unruh claims <u>with prejudice</u> based on a failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1). *See Gonzalez*, 759 F.3d at 1116.

2. **DISMISSES** Plaintiff's Eighth Amendment, American with Disabilities Act, and Rehabilitation Act claims <u>without prejudice and with leave to amend</u> based on a failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1).

3. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a Second Amended Complaint, <u>as to his Eighth Amendment, ADA and RA claims only</u>, which cures the deficiencies of pleading noted in this Order. Plaintiff's Second Amended Complaint must be complete by itself without reference to any previous version of his pleading; Defendants not named and any claims not re-alleged in the Second Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled"); *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989). If Plaintiff fails to timely amend, the Court will enter a final Order dismissing this civil action. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED.**

Dated: August 26, 2024

HON. MICHAEL M. ANELLO
United States District Judge